Good morning, everyone. Please be seated. Judge Rawlinson and I are delighted to welcome our friend and colleague, the Honorable Raymond Deary, from the United States District Court for the Eastern District of New York, who's out here helping us this week, and we very much appreciate having you here. My great pleasure. All right. Let's call the first case on the calendar, which is Mollett v. Netflix, Inc., No. 12-17045. Good morning, Your Honors. May it please the Court. Rochelle Rickert, Wolf Haldenstein, Adler, Freeman, and Herz, on behalf of the plaintiffs and appellants. I'd like to reserve about three minutes for rebuttal, please. I will try and help you. Thank you. You're welcome. We're here today because Netflix is unlawfully disclosing the private viewing information of its subscribers, including my clients, the plaintiffs and appellants, and the rest of the class. The Video Privacy Protection Act prohibits videotaped service providers from knowing disclosure of personal information without the informed written consent of the consumer, and the California Civil Code has a similar provision that prohibits the same conduct. Ms. Rickert, let me ask you a practical question. If Netflix is permitted to make a disclosure to the consumer, and the consumer has a direct link from the home television or entertainment center to Netflix, wouldn't you anticipate that that disclosure would be made via that method? I guess the only other way to do it would be to prepare a letter or something and send it in the mail or prepare an email. Well, the purpose of the streaming service is to view a video, a movie, and the consumers are required to connect this Netflix-ready device to the Internet, to their account. If they don't want to wait in the mail to have a DVD sent to them, correct? Correct. These are two separate services. I think maybe at the time we filed the complaint it was one fee for both services. Subsequent to that, they split it up. But the consumers are paying to stream movies to their televisions, and the only way to do that is to connect their Netflix-ready device to their account. The purpose is not to access their private information. But they can do that, can they not, if they happen to have their— you're going to have to forgive me because I'm not as technically proficient with the terms, but suppose that they have a—they use their television screen as their home computer screen in order to send emails and surf the web and so on. Wouldn't they be able to use that to communicate with Netflix if they wanted to about their account? They could if they chose to use their television as their computer, but really that's not what the service was designed for. Well, but I'm wrestling with this notion of what's wrong with Netflix communicating with its customer via the direct link that the customer has with Netflix, and why does that violate the VPPA? The problem here is that consumers really don't have a choice over the disclosures if they want to watch a movie on their television with the Netflix streaming service that they paid for. They use it the way Netflix intended it to be used and designed it to be used and marketed it to be used. They have no control over whether their personal information is going to flash up on the screen automatically every time they want to watch a movie. Well, I take it your complaint is that others besides the consumer, who presumably knows which movies he or she has been viewing, that that information might be inadvertently seen by others in the room at the time that it's flashed on the screen. Is that...? It might be. It's inevitable. If a person wants to watch a movie with anyone else, which, you know, Netflix markets this product as a social activity. Okay, but your argument to us was that the consumer has no choice. What would prevent the consumer from simply telling his guests, Would you mind waiting out in the hall? I'll go set this up, and when I'm ready to screen the film, I'll invite you in. Do we really have to hand out blindfolds when we invite people over to watch movies? I think that's an extraordinary measure that the VPPA doesn't require consumers to... Well, to ask it the other way, why should we impose civil liability on Netflix because the consumer is careless with how he or she shares access to information that's being streamed into his home? I think Netflix is being careless in not allowing the consumer any opportunity or way of protecting this information short of not using the service that they paid for. Well, I gave you one example. I mean, that's not such an extreme requirement, is it, to simply say to the guests, Please wait in the living room or on the front porch, and I'll tell you when you can come in. I think that that's an extraordinary measure, and the VPPA doesn't require plaintiffs to mitigate Netflix's disclosures. And Netflix knows that these disclosures are inevitable, that they're going to happen. It designed the system that way. Well, it sounds a little silly, of course, to say, Wait in the ante room while I cue up this movie. But is it any sillier than saying, Before we sit down and I turn on the set, I'm required by Netflix to ask you to sign this consent? Is that any sillier? Exactly. I don't think that Congress envisioned plaintiffs, consumers having to mitigate. No, but if I have the control, I as the account holder have the control, and I consent to turning that thing on, and whatever information it displays, my cue or my history and so forth, why isn't that the end of it? How is it any different than if I watched a movie on Friday night and Saturday morning, I went across to my neighbor and said, Boy, I saw a great movie last night on Netflix. How is it substantively any different? Because you have a choice whether or not you tell that person what you watched last night. But he hasn't consented. The third party? Yeah. The VPPA requires the consumer's written consent before Netflix can disclose to a third party. Understood. But if I am consenting, I am an exception as a consumer. I am receiving the information. Supposing I leave it on during the day and go run an errand, and I'm burgled. Has the act been violated by virtue of the fact that the intruder gets to see what movies I've watched in the past month or so? I think a burglary is a lot different than watching movies with your friend. Is there an exception that you can point to for burglars in the act? That's not a foreseeable disclosure, I would argue. Ah, it's foreseeability, is it? Okay, go ahead. Well, because the statute does require knowing disclosure, but Netflix knows that this, watching movies, is a group activity. It's not a private affair. It's not checking your email. Suppose the consumer goes down to his or her local coffee shop that has Wi-Fi access and queues up a movie there, and patrons in the coffee shop can look over the consumer's shoulder. Is Netflix liable for the disclosure under those circumstances? If the consumer is watching a video by themselves on their computer? In a public area? I think so, because the disclosure is still automatic, and the consumer has no control. They can't hide it. How does that fit with congressional intent? I mean, the legislative history is replete with concerns about what happened during the Bork nomination of an intentional disclosure by the news media who got a hold of Judge Bork's viewing list from the local video store and published it. That's what led to this legislation. Right. I'm sorry, what was the question? I'm not sure it was. It might have been a rhetorical question. Okay. You wanted to save about three minutes. You've got a minute and a half left. All right. Thank you. Thank you. Let's hear from Netflix. May it please the Court. Keith Eggleton on behalf of Netflix. Respectfully, this Court should affirm the decision of the district court. The district court got this exactly right by determining under the facts alleged by the plaintiffs and, frankly, the theory alleged, there could not be a disclosure violation under either the VPPA or the California Civil Code. As you know from the lower court's order, that decision was based in large part on how Netflix's system works, facts that were acknowledged in the complaint and, frankly, the briefing, and were not contested. The counsel just told you that a consumer has no choice. How the Netflix system works demonstrates just the opposite. So if somebody wants to stream Netflix's service, they have to do a number of things. The first thing they have to do is set up an account, acknowledged in paragraph 18 of the complaint. They have to go onto the website, form an account the way we all do with so many things now, establish a password, and set up the account. The next thing they have to do is decide where they'd like to stream the content. They have choices in that regard, phones, iPads, computers, and Netflix-ready devices that can put the content on television. What does that have to do with the disclosure or nondisclosure obligation? It reflects that it is a disclosure. When the consumer makes that decision and they decide to stream to that device, they have told Netflix, I'd like the content on that device. In other words, it highlights that it is a disclosure to that consumer. But it doesn't tell Netflix that it's okay to disclose it to others. It does not. Look, at the end of the day, what plaintiffs are complaining about is that while there's a disclosure to the consumer, they say if somebody else along the way happens to see that, that somehow that's a violation of the VPPA. Here, if that happens, it happens in someone's living room under their complete control. Well, not necessarily someone's living room. Take my hypothetical with the Wi-Fi at the coffee shop. I agree with your hypothetical, and it would be the same answer as the district court reached here. In fact, I think it's interesting the way plaintiffs tried to construct the case by focusing just on televisions. Frankly, the theory they're asserting and they're asking you to adopt would not be limited to televisions in people's living rooms. Well, I think that was the answer Ms. Rickard gave me in my hypothetical. I think it was, and I think it exactly reflects why it can't be a cause of action under these statutes. The consumer is in complete control of whether or not there's a disclosure. These are disclosure statutes. In order to have a violation, there has to be a disclosure. It would be nonsensical to have a consumer in charge of whether or not there's a violation. In other words, the way they tend to their devices, what they turn on, who they invite over, whether they open it in an airport or an airplane, the consumer essentially is in complete control of whether or not there's a disclosure, hence whether there's a violation. That I would suggest, both as a matter of statutory construction here and application, with respect to the exceptions to the consumer, can't be the answer. Go ahead. I just don't understand the notion of complete control. If I have a smart TV, yes, I choose to turn on the smart TV to access my Netflix account. But I don't have control over what is shown at the bottom of that screen once I do that. I don't have that control. That's what the case is about. That is what the case is about. But you do have you're right. You don't have control in the way it appears on the TV. That's exactly right. But you do have control in whether you choose to use the service on that device in that way. In other words, if there's a disclosure that happens after you choose to turn on the TV, you stream to your television, if there's a disclosure after that point, essentially you're making that disclosure by the way you've used the device in your own living room. This may have no relevancy to the legal question that we have to resolve, but is there any technical reason why Netflix can't set up through its software a choice for the consumer when he connects to the service? Would you like to review your prior viewing history to which he could answer no and then stream whatever it is that he's ordering today? So I, too, will probably pull a muscle if I try to get too technical here. But I think the simple answer is no. They could probably construct the system in a lot of different ways. And Netflix is very proud to have 50 million subscribers, the vast majority of whom stream content all the time to all types of different devices. Frankly, I think that issue, whether they design it differently or do it differently over time, is an issue between they and their customers as to how people like the service. One of the other ways of the way... And you've got a statute hanging over your head. That's true. Although, again, if the disclosure is to the consumer on the device, both statutes allow for an exception to that. So you can't have a violation. I'm just responding to the question that there are absolutely ways they could design it differently. They design their service in a way that they believe their customers like, and it's at this point they have 50 million people who like it that way. And, again, I'm not sure this is relevant, but I'll ask it anyway. Is there any kind of a warning that is provided, a shrink wrap type warning, when the service is set up that this information is going to be displayed every time you order a download? Not a shrink wrap per se, but you may have taken note of the privacy policy which Netflix has, which subscribers have to agree to as part of... When I said they go to the website to sign up, part of that is agreeing to the terms of use and the company's privacy. And does the privacy policy warn the consumer that this information is going to be displayed? Correct. The page, I believe it's 40-something in the excerpt of record, with respect to the privacy policy has a paragraph that explains that the Netflix-ready device does not have essentially a password entry that you have to make every time. And then it expressly, it reminds people, I don't know why it had to, but it does remind people to take care of the security of their devices and that they're responsible for the confidentiality of them and the access to them. So I'm not sure as a legal matter Netflix had to remind people that if you decide to stream to a computer or a television in your living room, you're responsible for that. But they did in that privacy policy. So they absolutely reminded people of that. And the district court took note of that and considered it with respect to the motion. Although I would submit to you that you don't need to reach it. I think the to-the-consumer exception is plain enough and encompasses what Netflix does here when it sends its streaming service to the device hooked up by the consumer. I think it's covered by the exception, and I don't believe you need to reach the privacy policy. Anybody have any further questions? Unless you have any other points. I'm happy to submit. I think we have your position well in mind. Thank you very much. All right. Ms. Rickard, I think you have about a minute and a half left. Judge Tallman, you asked Mr. Eggleton is there any reason that Netflix can't design the system differently, and he admitted, yes, we could. We could make it so that the consumer has a choice and can opt out of the disclosure, and I think it is relevant. I think it's relevant to the control that Netflix has. But the question is whether Netflix has to do that in order to comply with the VPPA, and that's why I prefaced my question with the cautionary note that it may or may not be relevant to the statutory interpretation issue. But I think it demonstrates who has control of these disclosures and that the disclosures are actually being made not only to the consumer, but to those people who are enjoying the product with the consumer. Well, you keep insisting that Netflix is responsible entirely for the choice here without acknowledging that the consumer has some say in who gets to look at the information, too. And you want to hold Netflix liable for the consumer's either negligence or poor choice in exposing this information to his or her guests. Well, the consumer is merely using the product the way it was marketed to them to be used. You love that photograph, don't you? I do. I do. Maybe we should mark that as an exhibit and introduce it. It's actually an exhibit to the reply brief. We've seen it. So I like it because it demonstrates Netflix's knowledge of the fact that this is a group activity. And they expect people to view it this way, and yet they don't give consumers any control over whether their friends and family are going to see what they watched last night on television. Well, the consumer can ask the friends and family to step out while that's done. So there's some control on the part of the consumer as well. Have the picture already brought up by the time the friends and family meet in whatever the viewing room is. So you could have snacks in the kitchen, bring up the movie in the media room, and then call everyone in. So there's some control. I mean, Judge Bork could have sent a private investigator to the video rental store, too, to monitor it and make sure that nobody That's a different circumstance. They weren't in Judge Bork's home. They went to a commercial establishment and got it. So that's a little bit different. But I think there's always something you could think of that might be done to prevent the disclosure, but I don't think the That works the same way for Netflix. The argument you're making that there's something that can always be thought of to do, that's the argument you're making that Netflix should do. And that's the dilemma. Where does the obligation stop with Netflix and start with the consumer? I think it's keyed around how is the service, what did I pay for when I bought the service? How does it work? How is it marketed to be worked? And the reality, I'm not going to be able to prevent people from glancing at my television while I'm setting this up. Or my children. Why not? Why can't you have your guests enjoying snacks in the kitchen while you go summon the download? Can't you pause it after all this information has been displayed and you've brought up the title of the movie that you're going to watch? I suppose you could, but again, I don't think that the burden under the VPPA is put on the consumer to take extraordinary measures or to mitigate. And there are situations with children But you want to hit Netflix for $1,000 every time they do that and without any responsibility on the part of the consumer to control who has access to the screen. I think if Netflix wants to design a product that's going to automatically disclose my private viewing history every time I try to watch a movie, that they should take that into account, the penalty. Okay, thank you very much. The case just argued is submitted.
judges: Tallman, Rawlinson, Dearie